UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (513) 394-1095 | Case No. __1:19-MJ-00630___ <br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, **Tyler D. Field**, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **513-394-1095** ("**THE SUBJECT TELEPHONE**"), whose service provider is **T-Mobile US, Inc.**, a wireless telephone service provider headquartered in Bellevue, Washington. The Subject Telephone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Special Agent (SA) of the Drug Enforcement Administration (DEA) and have been so employed since March 2016. I also serve as a U.S. Army Military Police Major in the Indiana Army National Guard and have done so for over eighteen years. Prior to being employed with the DEA, I was employed as a police officer for the Town of Bridgewater, Massachusetts for over three years. I

have graduated from the U.S. Army Military Police School, Plymouth Police Academy, and DEA Basic Agent Academy. During those courses I received training in the investigation of offenses involving controlled substances. As a Special Agent of the DEA, my duties and responsibilities include conducting criminal investigations for violations of federal law, particularly those found in Title 21 and Title 18 of the United States Code. As a DEA agent, I have participated in approximately twenty criminal investigations seeking evidence of violations of the Federal Controlled Substances Act (Title 21, of the United States Code).

4. I am currently assigned to the Cincinnati Resident Office of the DEA. I received specialized training from the DEA, including the 18-week Basic Agent Training course. That training focused on methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 United States Code, Sections 841 and 846 have been committed, are being committed, and will be committed by Anthony WILSON, David KEMP, and other as-yet known and unknown individuals. I believe there is probable cause that the **SUBJECT TELEPHONE** is being used in furtherance of the aforementioned crimes and that there is also probable cause to believe that the

location of the **SUBJECT TELEPHONE** will constitute evidence of those criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

7. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

8. In December, 2018, agents met with a Cincinnati Police Department confidential source (CS[1]) who told agents that David KEMP sells fentanyl. The CS said that during December 2018, KEMP provided the CS with approximately a gram of suspected fentanyl[2] as a "tester." The CS said that KEMP told the CS that it was fentanyl. KEMP also told the CS that KEMP currently had kilogram quantities of fentanyl. The CS described the fentanyl as white with a yellow tint. The CS stated that KEMP currently uses multiple telephone numbers.

9. On July 8, 2019, the Honorable Stephanie K. Bowman, United States Magistrate Judge in the Southern District of Ohio, signed a search warrant for KEMP's telephone 513-283-1378[3].

10. On August 16, 2019, at approximately 4:11 p.m., I observed, via a camera, a white 2019 Mitsubishi SUV bearing South Carolina License Plate Number RDR838 parked on the street in front of 3142 W. Tower Avenue, Cincinnati, Ohio. At approximately 4:18 p.m., I observed, via a camera, David KEMP enter the driver's seat of the Mitsubishi and depart the area.

11. At approximately 4:31 p.m., I observed, via a camera, the Mitsubishi park in the street in front of 1951 Knob Ct,, Cincinnati, Ohio. At 4:41 p.m., Anthony WILSON exited the Mitsubishi and

---

[1] The CS has been previously charged with a felony drug-trafficking violation and is cooperating for monetary payment. The CS has previously been able to provide information that has been independently corroborated by law enforcement officers and your affiant considers the CS reliable.
[2] The CS was not expecting KEMP to give the CS fentanyl during their encounter. Unsure of what to do with the fentanyl, the CS discarded the fentanyl. As a result, investigators were not able to submit the suspected fentanyl for analysis.
[3] I determined that KEMP was the user of telephone number 513-283-1378 through court-authorized geo-location information, surveillance, and call record analysis.

entered the front door of 1951 Knob Ct. At approximately 4:46 p.m., WILSON exited the front door of 1951 Knob Ct and then leaned into the open front passenger door of the Mitsubishi. WILSON closed the front passenger door of the Mitsubishi and then walked to a Honda CRV. WILSON reached through the front driver's side door window of the Honda. WILSON remained standing at the front driver's door of the Honda and then reached his arm through driver's side again in a manner consistent with a hand-to-hand drug transaction. WILSON then appeared to put something in his pocket. WILSON remained standing at the driver's side window of the Honda. Moments later, WILSON walked towards the Mitsubishi and then the Honda departed the area and was followed by surveillance. WILSON entered the front passenger door of the Mitsubishi.

12. At approximately 5:15 p.m. officers/agents observed the Honda park in the parking lot at the St. Francis Court Apartments located at 1860 Queen City Avenue. An unidentified male in his early to mid-thirties, walked up on foot towards the Honda and approached the Honda's driver's side door in a manner consistent with a hand-to-hand drug transaction. Moments later the unidentified male walked away from the Honda and the Honda departed the area. Officers/agents maintained surveillance on the Honda as it travelled to the Kroger located at 3609 Warsaw Avenue. The occupants of the Honda went inside the Kroger.

13. At approximately 5:57 p.m., the occupants of the Honda exited the store. As they approached the Honda, Ohio State Highway Patrol Troopers drove their marked cruisers behind the Honda and activated their blue emergency lights. The Troopers informed the individuals that they had received a complaint that they had been involved in a drug transaction. The driver gave verbal consent for the troopers to search the Honda. The troopers did not locate any drugs however located a cord that appears to be used to conceal controlled substances behind the dashboard.

14. According to subscriber records, the **SUBJECT TELEPHONE** is subscribed to WILSON. According to call records, the **SUBJECT TELEPHONE** communicated with KEMP's telephone number 513-283-1378 approximately 105 times between June 28, 2019 and August 20, 2019. During this time frame, KEMP's telephone 513-283-1378 was WILSON's most frequent contact.

15. Beginning on August 22, 2019, Sprint could no longer locate KEMP's telephone number 513-283-1378. Consequently, I believe that KEMP stopped using telephone number 513-283-1378. While conducting call record analysis, I learned that beginning on or after August 20, 2019, sixteen telephone numbers previously calling KEMP's telephone number 513-283-1378 began calling telephone number 513-952-1030. According to subscriber records, telephone number 513-952-1030 was subscribed on August 19, 2019. Based on my belief that KEMP stopped using telephone number 513-283-1378 on or around August 22, 2019, my knowledge that sixteen telephone numbers previously calling KEMP's telephone number 513-283-1378 began calling telephone number 513-952-1030 on or after August 20, 2019, and my knowledge that telephone number 513-952-1030 was activated on August 19, 2019, I believe that KEMP is now using telephone number 513-952-1030.

16. According to call records, beginning on August 20, 2019, the **SUBJECT TELEPHONE** began communicating with telephone number 513-952-1030. Between August 20, 2019 and September 17, 2019, the **SUBJECT TELEPHONE** and telephone number 513-952-1030 communicated approximately 165 times. During this time frame, telephone number 513-952-1030 was the most frequent contact of the **SUBJECT TELEPHONE.**

17. Based on my training, experience, discussions with other law enforcement officers/agents, the CS's statements that KEMP is a source of supply for heroin/fentanyl, my knowledge that KEMP drove WILSON to the area of 1951 Knob Ct on August 16, 2019 and my observations of

WILSON conducting what objectively appeared to me, based on my training and experience, a hand-to-hand drug transaction, I believe that KEMP and WILSON are involved in a drug trafficking conspiracy.

18. Based on my knowledge that the **SUBJECT TELEPHONE** is subscribed to WILSON, my knowledge that KEMP's telephone number 513-283-1378 was the most frequent contact of the **SUBJECT TELEPHONE** between June 28, 2019 and August 20, 2019, my belief that KEMP stopped using telephone number 513-283-1378 and started using telephone number 513-952-1030, and my knowledge that between August 20, 2019 and September 17, 2019, telephone number 513-952-1030 was the most frequent contact of the **SUBJECT TELEPHONE**, I believe that WILSON is using the **SUBJECT TELEPHONE** to communicate with KEMP in furtherance of their drug trafficking conspiracy.

19. In my training and experience, I have learned that **[WIRELESS PROVIDER]** is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device

does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

20. Based on my training and experience, I know that **T-Mobile US, Inc.** can collect E-911 Phase II data about the location of the Subject Telephone, including by initiating a signal to determine the location of the Subject Telephone on **T-Mobile US, Inc.**'s network or with such other reference points as may be reasonably available.

21. Based on my training and experience, I know that **T-Mobile US, Inc.** can collect cell-site data about the Subject Telephone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as **T-Mobile US, Inc.** typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

22. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

23. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Subject Telephone would

seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

24. I further request that the Court direct **T-Mobile US, Inc.** to disclose to the government any information described in Attachment B that is within the possession, custody, or control of **T-Mobile US, Inc.**. I also request that the Court direct **T-Mobile US, Inc.** to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with **T-Mobile US, Inc.**'s services, including by initiating a signal to determine the location of the Subject Telephone on **T-Mobile US, Inc.**'s network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate **T-Mobile US, Inc.** for reasonable expenses incurred in furnishing such facilities or assistance.

25. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Subject Telephone outside of daytime hours.

26. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the

investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Tyler D. Field
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on this __23rd__ day of September, 2019

_____
HONORABLE STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

**Property to Be Searched**

1. The cellular telephone assigned call number (513) 394-1095 (the "Subject Telephone"), whose wireless service provider is **T-Mobile US, Inc.**, a company headquartered in Bellevue, Washington.

2. Records and information associated with the Subject Telephone that is within the possession, custody, or control of **T-Mobile US, Inc.** including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

**I.** **Information to be Disclosed by the Provider**

All information about the location of the Subject Telephone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Subject Telephone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of **T-Mobile US, Inc.**, **T-Mobile US, Inc.** is required to disclose the Location Information to the government. In addition, **T-Mobile US, Inc.** must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with **T-Mobile US, Inc.**'s services, including by initiating a signal to determine the location of the Subject Telephone on **T-Mobile US, Inc.**'s network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate **T-Mobile US, Inc.** for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

II. **Information to Be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of 21 United States Code, Sections 841 and 846 involving Anthony WILSON, David KEMP, and other as-yet known and unknown individuals.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.